UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE LITTLE PUEBLO INN, LLC, <br><br> Plaintiff, <br><br> v. <br><br> WILLARD ALONZO STANBACK, P.C., and WILLARD ALONZO STANBACK, ESQ., <br><br> Defendants. | Civil Action No. 20-11233 (RK) (RLS) <br><br><br> **MEMORANDUM OPINION AND ORDER** |

SINGH, United States Magistrate Judge.

Presently before the Court is the motion of Plaintiff The Little Pueblo Inn, LLC ("Plaintiff") for leave to amend its complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure (the "Motion"). (Dkt. No. 74). Defendants Willard Alonzo Stanback, P.C., and Willard Alonzo Stanback, Esq. (collectively, "Defendants") opposed the Motion, (Dkt. No. 77), to which Plaintiff replied, (Dkt. No. 78). The Court has fully reviewed the submissions of the parties and considers the same without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth below, Plaintiff's Motion is DENIED.

**I.      RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

This matter arises out of an escrow agreement executed by Plaintiff and Third-Party Defendant North and Lane Capital Venture, LLP[1] ("North and Lane") on June 6, 2019, appointing Defendants as escrow agents in connection with Plaintiff's efforts to secure a $6 million loan to

---

[1] The Clerk of Court previously entered a Default Judgment against North and Lane and in favor of Defendants pursuant to Federal Rule of Civil Procedure 55(b). (Dkt. No. 71). Plaintiff has not asserted any claims directly against North and Lane. (*See* Dkt. No. 1).

1

finance construction of a luxury hotel in Taos, New Mexico (the "Escrow Agreement"). (*See generally* Dkt. No. 1). Pursuant to a memorandum of understanding (the "MOU") between Plaintiff and North and Lane executed on June 5, 2019, North and Lane was to serve as an intermediary to arrange for the construction loan. (Dkt. No. 1 at ¶ 11). Under to the Escrow Agreement, Plaintiff agreed to deposit $300,000 in escrow with Defendants, which was to be released to North and Lane upon satisfaction of certain conditions.[2] (*See* Dkt. No. 77-12 at p. 5).[3] On June 12, 2019, Plaintiff deposited the $300,000 with Defendants (the "Escrow Funds"). (Dkt. No. 1 at ¶ 17; *see also* Dkt. No. 77-13). According to Plaintiff, if North and Lane failed to secure the loan for Plaintiff within thirty (30) business days, the Escrow Agreement required Defendants to refund $297,000 to Plaintiff and pay Plaintiff an additional $3,000, while North and Lane was required to pay Plaintiff a "default fee" of $15,000. (Dkt. No. 1 at ¶ 16).

Through its operative complaint, Plaintiff alleges that Defendants wrongfully distributed the Escrow Funds to North and Lane in violation of the Escrow Agreement, as the conditions precedent to distribution of the Funds had not yet been satisfied. (Dkt. No. 1 at ¶¶ 28-53). Defendants, having disbursed the Escrow Funds to North and Lane, did not return any portion of the Funds to Plaintiff. (Dkt. No. 1 at ¶ 54). Plaintiff was unable to recover the Escrow Funds from North and Lane, despite service of a written notice of default on May 19, 2020. (Dkt. No. 1 at ¶ 59).

---

[2] Specifically, the Escrow Agreement "instructed" Defendants to release the Escrow Funds to North and Lane when three conditions were met: (1) Defendants' transmission of confirmation of receipt of the Escrow Funds to North and Lane and Plaintiff; (2) North and Lane's delivery of an executed promissory note in the amount of $300,000 to Defendants; and (3) Defendants' verification that the promissory note was duly signed by North and Lane's agent, Archie Keaton, upon delivery of both the Escrow Funds and the fully executed promissory note. (Dkt. No. 77-12 at p. 5).
[3] All citations to page numbers herein refer to those automatically generated by the electronic filing system (PACER).

On August 24, 2020, Plaintiff initiated this action, asserting claims for breach of the Escrow Agreement, breach of fiduciary duties, and negligence; Plaintiff sought to recover the Escrow Funds, plus interest and attorneys' fees. (Dkt. No. 1 at ¶¶ 74-95). On November 9, 2020, Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), (Dkt. No. 16), which this Court denied, (Dkt. No. 20). On July 15, 2021, the Court entered a Pretrial Scheduling Order, in which it set a deadline for the parties to move to amend their pleadings by no later than September 10, 2021. (Dkt. No. 32). The Court later extended that deadline to December 23, 2021. (Dkt. No. 38).

Notably, in the parties' joint discovery plan submitted to the Court on March 29, 2021, Plaintiff identified its monetary demand as "$297,000 plus accrued attorneys' fees, as authorized by the terms of the escrow agreement." (Dkt. No. 77-3 at p. 5). Soon thereafter, Plaintiff served its Rule 26 Initial Disclosures upon Defendants, claiming $297,000 in damages plus interest, costs, and attorneys' fees. (Dkt. No. 77-5 at p. 3). On September 3, 2021, Plaintiff served its Responses to Defendants' First Set of Interrogatories, in which it referred Defendants to its damage calculations as stated in its Rule 26 Initial Disclosures. (Dkt. No. 77-6 at p. 4).

The parties proceeded through discovery over the next two years.[4] (*See* Dkt. No. 77-8). According to the Court's December 10, 2021 Scheduling Order, (Dkt. No. 38), the parties were to complete fact discovery by no later than March 31, 2022. On the Court-ordered deadline of December 23, 2021, Defendants moved for leave to file an Amended Third-Party Complaint and Counterclaim, which the Court granted. (Dkt. Nos. 39, 42, 43). Through a letter dated October 4, 2022, the parties reported that they completed document discovery and were proceeding to

---

[4] Though discovery in this matter is formally closed pursuant to the Court's December 10, 2021 Scheduling Order, (Dkt. No. 38), the parties have engaged in informal discovery well beyond that deadline.

depositions. (Dkt. No. 52). The parties completed the depositions of Mr. Stanback and Timothy Hoffman, Plaintiff's principal, by August 2023. (*See* Dkt. No. 67).

Plaintiff supplemented its Responses to Defendants' First Set of Interrogatories on October 4, 2023, referring to new documents responsive to the request for its damages claim. (Dkt. No. 77-9 at p. 4). Plaintiff further supplemented those responses with the identification of more documents on October 17, 2023 and November 2, 2023. (Dkt. No. 77-10 at p. 4; Dkt. No. 77-11 at p. 4). Also on October 17, 2023, the parties participated in a settlement conference and, when it proved unsuccessful, Plaintiff filed the instant Motion. (*See* Dkt. Nos. 72, 74). Through its Motion, Plaintiff seeks to add relief for consequential damages allegedly flowing from the alleged breach of the Escrow Agreement. (*See* Dkt. No. 74 at pp. 116-36). Defendants oppose the Motion, arguing that the Court should deny leave to amend because the amendments are unduly delayed, futile, and would unfairly prejudice Defendants. (Dkt. No. 77). Plaintiff replied, arguing that it meets the standard under Federal Rule of Civil Procedure 15. (Dkt. No. 78).

## II.    LEGAL STANDARD

Here, Plaintiff seeks leave to file an amended complaint well after the Court-ordered deadline for such applications. If a party seeks to amend its pleading after the deadline set in the Court's scheduling order, the movant must satisfy the good cause standard pursuant to Rule 16 of the Federal Rules of Civil Procedure before the Court considers whether the movant meets the standards for amendment pursuant to Rule 15 of the Federal Rules of Civil Procedure. *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010); *see also Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) ("[W]hen a party moves to amend or add a party after the deadline in a district court's scheduling order has passed, the 'good cause'

4

standard of Rule 16(b)(4) . . . applies."); *Wang v. N.J. State Police*, Civ. No. 18-11933, 2021 WL 794535, at *3 (D.N.J. Mar. 1, 2021).

To establish good cause, the movant must show due diligence. *Race Tires Am., Inc.*, 614 F.3d at 84. Due diligence can be met if the "delay in filing the motion to amend stemmed from any mistake, excusable neglect, or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order." *Young v. United States*, 152 F. Supp. 3d 337, 353 (D.N.J. 2015) (citation and internal quotation marks omitted). If a party "possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary" to seek leave to amend before the deadline lapsed, then courts will find that party lacked the necessary due diligence and will deny leave to amend. *Fermin v. Toyota Material Handling, U.S.A., Inc.*, Civ. No. 10-3755, 2012 WL 1393074, at *3 (D.N.J. Apr. 23, 2012). Indeed, Rule 16's good cause standard seeks to fix the pleadings at some point in the proceedings. *See United States ex rel. McDermott v. Life Source Servs., LLC*, Civ. No. 19-cv-15360, 2023 WL 2238550, at *2 (D.N.J. Feb. 27, 2023) (citing, *inter alia*, Fed. R. Civ. P. 16(b), Advisory Committee's Note on 1983 amendment).

Only once good cause is met does the Court evaluate the proposed pleading under Rule 15 of the Federal Rules of Civil Procedure. *Harbor Laundry Sales, Inc. v. Mayflower Textile Serv. Co.*, Civ. No. 09-6259, 2011 WL 6303258, at *3 (D.N.J. Dec. 16, 2011) (internal citation omitted); *accord Wang*, 2021 WL 794535, at *2. Under Federal Rule of Civil Procedure 15(a)(2), a court should freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182 (1962); *in re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The Rule aims to "ensure[] that an inadvertent error in, or omission from, an

original pleading will not preclude a party from securing relief on the merits of his claim." *Korb v. Haystings*, 860 F. App'x 222, 226 n.5 (3d Cir. 2021) (citations omitted).

Nevertheless, the Court may, in its discretion, deny a motion for leave to amend in one of three instances: (1) the movant engaged in undue delay, bad faith, or dilatory motives; (2) the amendment would cause undue prejudice to the non-movant; or (3) amendment would be futile. *See, e.g.*, *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004); *BTG Int'l Ltd. v. Actavis Labs. FL, Inc.*, Civ. No. 15-5909, 2017 WL 529446, at *2 (D.N.J. Feb. 8, 2017). Notably, "[n]either Rule 15 nor Rule 16 stands for the proposition that a party can amend the complaint each and every time she becomes aware of new factual allegations that already support the allegations as set forth in the complaint." *McDermott*, 2023 WL 2238550, at *4.

As to undue delay, "[d]elay alone is not sufficient to justify denial of leave to amend[,]" but "at some point, delay will become undue, placing an unwarranted burden on the court and an unfair burden on the opposing party." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (internal citation, editing, and quotation marks omitted). "Delay may become undue when a movant has had previous opportunities to amend a complaint." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (citation omitted). Accordingly, a court will focus on why a movant did not seek to amend sooner and consider "whether new information came to light or was available earlier to the moving party." *Ford Motor Co. v. Edgewood Prop., Inc.*, Civ. No. 06-1278, 2011 WL 1321605, at *2 (D.N.J. Apr. 4, 2011) (quoting *in re Adams Golf, Inc. Secs. Litig.*, 381 F.3d 267, 280 (3d Cir. 2004)) (internal quotation marks omitted); *XL Specialty Ins. Co. v. PCS Wireless Warehouse, Inc.*, Civ. No. 18-17210, 2020 WL 967855, at *3 (D.N.J. Feb. 28, 2020).

In addition, "substantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend." *Cureton*, 252 F.3d at 273 (citation omitted). A court will consider the hardship to the non-movant if the amendment were permitted, including "additional discovery, cost, and preparation to defend against new facts or new theories." *Id.*

In considering whether a party seeks to amend in bad faith, the Court does not consider whether the original complaint was filed in bad faith or whether conduct outside the motion to amend amounts to bad faith. *See Livingstone v. Haddon Point Manager LLC*, Civ. No. 19-13412, 2020 WL 7137852, at *3 (D.N.J. Dec. 7, 2020) (citation omitted); *see also Diallo v. Alo Enterprises Corp.*, Civ. No. 12-3762, 2013 WL 3772827, at *3 (D.N.J. July 17, 2023) ("Simply failing to add a claim a party had prior knowledge of does not alone amount to bad faith."). Rather, the question of bad faith focuses on a party's motives for not amending its pleadings sooner. *See Zelma v. Choice Energy, LLC*, Civ. No. 19-17535, 2020 WL 5201341, at *2 (D.N.J. Sept. 1, 2020).

Ultimately, the decision of whether to grant leave to amend lies within the sound discretion of the Court. *Arab Afr. Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993).

### III.  DISCUSSION

As it must, the Court first considers whether Plaintiff meets Rule 16's good cause standard before considering the Motion to Amend under Rule 15.

#### A.  FEDERAL RULE OF CIVIL PROCEDURE 16

Though the parties do not address good cause under Rule 16, a pretrial scheduling order may be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). This Court set a December 23, 2021 deadline for the parties to seek leave to amend their pleadings. (Dkt. No. 38). Almost two years after that deadline, Plaintiff now seeks to amend its Complaint

to inject new damages theories into the case. As a result, good cause must exist for Plaintiff to bring its delayed Motion. *See, e.g.*, *Race Tires Am., Inc.*, 614 F.3d at 84.

The Court's independent review of this matter leads it to conclude that Plaintiff has not exercised sufficient due diligence to withstand scrutiny under Rule 16. Notably, Plaintiff seeks, years after the Court-ordered deadline, to amend its complaint to broaden its theory of damages based on events of which it has well-known about for over four years. Yet, if "'a party was aware of the facts that would lead it to amend and failed to act on it[,]'" then that party cannot satisfy the good cause standard. *Holmes v. Christie*, Civ. No. 16-1434, 2023 WL 8016055, at *3 (D.N.J. Nov. 17, 2023) (quoting *Roggio v. F.B.I.*, Civ. No. 08-4991, 2011 WL 3625042, at *5 (D.N.J. Aug. 17, 2011)). Indeed, "[t]he most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed." *Kennedy v. City of Newark*, Civ. No. 10-1405, 2011 WL 2669601, at *2 (D.N.J. July 7, 2011); *see also Lee v. Park*, 720 Fed. App'x 663, 668-69 (3d Cir. 2017) (affirming denial of leave to amend a complaint after deadline set in scheduling order where plaintiff sought only to add a new cause of action "based on the same facts found within the initial complaint"). Here, through its Motion, Plaintiff acknowledges that it was aware of the theory of damages it now seeks to insert at this late hour since at least 2020, when it sought to secure financing to complete the Project but was unable to do so. (*See* Dkt. No. 74 at p. 7). To inject this new damages theory to the case, Plaintiff proffers no new facts that were unavailable after the 2021 deadline to amend. Plaintiff could have sought to amend at that time, or even sought to extend the deadline to amend, but declined to do so. *See Holmes*, 2023 WL 8016055, at *3 (finding Plaintiff did not show good cause under Rule 16 under similar circumstances); *see also Fermin*, 2012 WL 1393074, at *3.

8

Accordingly, the Court finds that Plaintiff failed to exercise the due diligence required to show good cause under Rule 16 of the Federal Rules of Civil Procedure and, for that reason, amendment should be denied.

### B.  FEDERAL RULE OF CIVIL PROCEDURE 15

Moreover, even assuming Plaintiff could establish good cause, leave to amend would be denied on the bases that amendment was unduly delayed and would be unduly prejudicial.

First, the Court finds that Plaintiff unduly delayed in seeking leave to amend its Complaint. Though delay alone is not sufficient to justify denying leave to amend, *Arthur*, 434 F.3d at 204, "at some point, the delay will become undue" based on the burdens it places on the court or the burdens and prejudice it poses to the opposing party, *Cureton*, 252 F.3d at 273. "The inquiry into undue delay includes consideration of the court's 'interests in judicial economy and finality,' as well as a 'focus on the movant's reasons for not amending sooner.'" *Holmes*, 2023 WL 8016055, at *5 (quoting *USX Corp. v. Barnhart*, 395 F.3d 161, 168 (3d Cir. 2004)) (internal editing marks omitted).

The Court finds Plaintiff unduly delayed its request to amend the Complaint for similar reasons that the Court found a lack of good cause under Rule 16. Plaintiff had ample opportunity to seek to amend prior to the close of written discovery and before depositions began, but failed to do so. Plaintiff had been aware of the facts forming the basis of the new damages theory for years. Plaintiff has not pointed to anything new that would justify the significant delay in seeking leave to amend.

In addition, granting leave to amend would unduly prejudice Defendants, who have proceeded through discovery relying upon Plaintiff's representations and disclosures that its damages theory was limited to the funds in escrow plus interest, costs, and fees. It was only on

the eve of a settlement conference that Plaintiff raised for the first time that it intended to significantly expand its damages theory to claim far more than the $297,000 in escrow funds plus interest, costs, and attorneys' fees. Indeed, to permit the amendment at this late stage would require the need to re-open written discovery, broaden the scope of discovery already completed, and potentially require the parties to re-depose witnesses for a second time. Expanding and re-opening discovery at this stage would unduly prejudice Defendants in a case that has been pending for more than three years. *See Holmes*, 2023 WL 8016055, at *6 (finding amendment would unfairly prejudice the defendants where plaintiff's proffered new damages theory would significantly expand discovery). Accordingly, the Court, therefore, denies Plaintiff leave to amend on these bases.[5]

## IV.  CONCLUSION

Having considered the submissions of the parties, and for the reasons set forth above,

**IT IS** on this **13th** day of **February 2024** hereby

**ORDERED** that Plaintiff's motion for leave to amend its Complaint (Dkt. No. 74) is hereby **DENIED;** and it is further

**ORDERED** that the Clerk of Court is hereby directed to **TERMINATE** the Motion pending at Docket Entry No. 74.

**SO ORDERED**.

/s/ Rukhsanah L. Singh
**RUKHSANAH L. SINGH**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] The Court declines to address Defendants' objections to the proposed amendment on futility grounds.